IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSOCIATION OF CAR WASH OWNERS, INC., ZOOM CAR SPA LLC, and FIVE STAR HAND WASH LLC,<br><br>            **Plaintiffs,**<br><br>v.<br><br>CITY OF NEW YORK,<br><br>            **Defendant.** | Civil Action No. _____ |

## COMPLAINT

Plaintiffs Association of Car Wash Owners, Inc., Zoom Car Spa LLC, and Five Star Hand Wash, LLC, by and through their undersigned attorneys Proskauer Rose LLP, for their Complaint against defendant the City of New York ("City"), hereby allege as follows:

### PRELIMINARY STATEMENT

1. The law challenged in this action, New York City Local Law 62 for the Year 2015 ("Local Law 62," attached as Exhibit A to the Complaint), requires, effective December 26, 2015, all car wash establishments in New York City, including the individual car wash owner plaintiffs, as a condition of obtaining an operating license, to post a **$150,000** surety bond. However, if that car wash establishment is a party to a collective bargaining agreement, only a bond in $1/5^{th}$ of that amount – **$30,000** – is required. A bond of $150,000 is the highest amount ever set for a business license by the City of New York.

2. Plaintiffs are an association representing car wash owners and two individual car wash owners who wish to remain in business lawfully operating car washes in New York City.

The individual car wash owner plaintiffs and many association members may be unable to pay the excessive costs and meet the related requirements needed to obtain the $150,000 surety bond, or may only be able to afford those costs and meet the related requirements if they make drastic changes to their businesses (including cuts to payroll).  Even car wash owners who could afford to pay the costs and meet the other requirements associated with posting the $150,000 surety bond would suffer severe economic harm and competitive disadvantage due to the discrepancy between those high costs and related requirements and the relatively low costs and related requirements their car wash competitors who have collective bargaining agreements would need to incur to post a $30,000 bond.

3. Thus, if Local Law 62 takes effect, the excessive costs and related requirements of the $150,000 surety bond requirement will place significant pressure on plaintiffs to take immediate steps both to unionize their employees and to enter a collective bargaining agreement even if their employees have not yet voted to join a union, or the terms of that collective bargaining agreement impose added operating costs on plaintiffs.

4. The law therefore violates plaintiffs' federal rights, recognized repeatedly by the United States Supreme Court, that neither state nor local governments may interfere in the collective bargaining process on behalf of one side or the other.  The Supreme Court has held that a city may not enact regulations to place employers under economic pressure to reach a collective bargaining agreement.  *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986) (preemption of city's attempt to condition taxi company's operating franchise on resolution of labor dispute).   Local Law 62 is therefore void because of federal preemption.

5. In addition, one of the purposes of the surety bond requirement is to protect workers whose employers commit violations of the law concerning nonpayment or

2

underpayment of wages. But the Labor Law of the State of New York already provides workers with this very protection.

6. Because Local Law 62 purports to impose regulations over car washers to protect workers from wage nonpayment and underpayment violations the law is also void on the basis of state preemption. New York courts have made clear that only the State, not localities, may occupy the field of protecting workers from nonpayment or underpayment of wages. *See Wholesale Laundry Bd. of Trade v. City of New York*, 17 A.D.2d 327 (1st Dep't 1962) (preemption of New York City minimum wage law), *reasoning aff'd*, 12 N.Y.2d 998 (1963); *ILC Data Device Corp. v. County of Suffolk*, 182 A.D.2d 293 (2d Dep't 1992) (preemption of county law that "improperly attempts to add another layer of regulation in an area where comprehensive and detailed regulations already exist at the State level, and its enforcement would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns"). In addition, Local Law 62 is preempted under state law because, by delegating to the New York City Department of Consumer Affairs Commissioner certain authority over wage nonpayment, it directly conflicts with provisions of the New York State Labor Law authorizing the State Commissioner of Labor to take action in similar circumstances.

7. Further, there is no reason for the amount of the surety bond to be set at a level that is five times higher for non-union car washes than union car washes with collective bargaining agreements. Whether or not a collective bargaining agreement exists has no rational relationship to the size of potential unpaid wage judgments, the apparent rationale for the law. Thus, Local Law 62 is also invalid under the equal protection clause of the Fourteenth Amendment.

8.      The $150,000 surety bond amount is also a facially arbitrary exercise of the City's power to regulate assuming it even has that power here. Although New York City has previously imposed surety bond requirements on other types of businesses, including auctioneers, employment agencies, home improvement contractors, laundries, pawn brokers, process servers, ticket resellers, second hand dealers, and storage warehouses, **in the history of New York City no other business has ever been subject to such a punitively high surety bond requirement merely as a condition of obtaining a license to operate.** Most surety bond requirements are in far lesser amounts, and the only even arguably comparably sized bond is a $100,000 surety bond required for process serving agencies.

9.      No other type of business required to post a surety bond has ever been subject to arbitrary punitive treatment simply because it has no collective bargaining agreement. Thus, because of both the excessive amount of the bond and the law's arbitrary punitive treatment of businesses without collective bargaining agreements, Local Law 62 is also invalid under the due process clause of the Fourteenth Amendment.

## PARTIES

10.     Plaintiff Association of Car Wash Owners, Inc. is an organization formed in 2012 for the protection, benefit and promotion of the professional car wash industry in New York City. It has over 90 members, and its members own and operate car washes throughout the City. Those members will be subject to the requirements of Local Law 62 and will incur significant costs as a result.

11.     Plaintiff Zoom Car Spa LLC is a New York limited liability company that owns and operates a car wash located at 3513 Atlantic Ave., Brooklyn, NY 11208. The car wash currently has approximately 16 employees, who do not have a collective bargaining

4

representative or a collective bargaining agreement. The car wash will be subject to the requirements of Local Law 62 and will incur significant costs as a result.

12. Plaintiff Five Star Hand Wash LLC is a New York limited liability company that owns and operates a car wash located at 1865 Webster Ave., Bronx, NY 10457. The car wash currently has approximately 25 employees, who do not have a collective bargaining representative or a collective bargaining agreement. The car wash will be subject to the requirements of Local Law 62 and will incur significant costs as a result.

13. Defendant City of New York is a municipality organized and existing under the laws of New York State. It is authorized by law to create and maintain the Department of Consumer Affairs, and as such is responsible, in whole or in part, for the creation of the laws and policies complained of herein.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15. This Court is authorized to issue a declaratory judgment, a preliminary and permanent injunction and damages pursuant to 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983.

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### Local Law 62

17. Local Law 62 provides, "It shall be unlawful for any car wash to operate without a license." (Ex. A at 2 (§ 20-541).) In addition, "Any individual or business entity operating a car wash without a valid license issued by the commissioner shall be liable for a civil penalty of

one hundred dollars per day for every calendar day during which the unlicensed car wash operated." (Ex. A at 9 (§ 20-545(b)).)

18. Local Law 62 provides that applicants may apply to obtain a license by filing an application with the Commissioner of the Department of Consumer Affairs ("Commissioner"), paying a $550 fee for each location where the applicant's car wash operates, and providing certain information, including "written proof of compliance with the surety bond requirement as described in section 20-542 of this subchapter." (Ex. A at 3 (§ 20-541(d)(2)).)

19. Section 20-542, entitled "Surety bonds," provides in full:

> a. Except as provided in subdivision b of this section, prior to the issuance or renewal of a car wash license, each applicant shall furnish to the commissioner a surety bond in the sum of one hundred fifty thousand dollars, payable to the city of New York and approved as to form by the commissioner.
>
> b. Prior to the issuance or renewal of a car wash license, an applicant described in paragraph one or two of this subdivision shall furnish to the commissioner a surety bond in the sum of thirty thousand dollars, payable to the city of New York and approved as to form by the commissioner.
>
>> 1. The applicant is a party to a current and bona fide collective bargaining agreement, with a collective bargaining representative of its employees, that expressly provides for the timely payment of wages and an expeditious process to resolve disputes concerning nonpayment or underpayment of wages.
>>
>> 2. The applicant is covered by an active monitoring agreement pursuant to a settlement supervised by the office of the attorney general of the United States or the state of New York, or the department of labor of the United States or the state of New York, or other government agency with jurisdiction over wage payment issues, on the condition that such monitoring agreement:
>>
>>> i. expressly provides for the timely payment of wages at or above the applicable minimum wage rate;
>>>
>>> ii. requires that the employer be subjected to at least monthly monitoring by an independent monitor appointed; and

       iii. provides for an expeditious process to resolve disputes concerning wage violations without the expense of litigation, including reasonable mechanisms to secure the assets necessary to cover any judgment or arbitration award.

   c. The surety bond required by subdivisions a and b of this section shall be conditioned upon the applicant's compliance with the provisions of this subchapter and any rules promulgated thereunder, and upon the further condition that the applicant shall pay or satisfy:

      1. any fine, penalty or other obligation to the city within thirty days of the imposition of such fine, penalty or obligation;

      2. any final judgment recovered by any person who received car wash services from a licensee thereunder and was damaged thereby within thirty days of such judgment; and

      3. any final judgment recovered by any employee of the licensee for nonpayment or underpayment of wages within thirty days of such judgment.

(Ex. A at 5-6 (§ 20-542).)

20. Section 20-542(c)(1)-(3) therefore indicates the three purposes that the surety bond requirement supposedly serves. The surety bond requirement ensures that either $150,000 or $30,000 will be available to pay any potential unpaid (1) fines, penalties, or other obligations to the city; (2) final judgments recovered by car wash customers; and (3) final judgments recovered by car wash employees for nonpayment or underpayment of wages.

21. Section 4 provides Local Law 62 shall take effect 180 days after enactment, or December 26, 2015. (Ex. A at 12 (§ 4).)

22. The Commissioner is granted broad authority and discretion with respect to rulemaking under Local Law 62. Section 20-546 provides, "The commissioner may make and promulgate such rules as are necessary to carry out the provisions of this subchapter." (Ex. A at 9 (§ 20-546).)

23.     The Commissioner is also granted broad authority and discretion with respect to the issuance and renewal of licenses.  Local Law 62 provides that the Commissioner "may deny issuance or renewal of a license upon a finding that . . . the applicant lacks good moral character." (Ex. A at 4 (§ 20-541(e)(3)).)  In making this determination, one of the factors that the Commissioner "may consider" is:

> final determinations of liability in a civil, criminal or administrative action involving egregious or repeated nonpayment or underpayment of wages.

(Ex. A at 4 (§ 20-541(e)(3)(ii)).)  Similarly, the Commissioner is granted authority and discretion to "suspend or revoke a license issued pursuant to section 20-541 of this subchapter upon the occurrence of any one or more of the following conditions," including:

> A final determination of liability in a civil, criminal or administrative action involving egregious or repeated nonpayment or underpayment of wages.

(Ex. A at 8 (§ 20-545(a)).)

24.     Thus, not only is the amount of the surety bond made available to pay or satisfy unpaid judgments for "nonpayment or underpayment of wages," (Ex. A at 6 (§ 20-542(c)(3))), but a car wash's license may also be denied, revoked, or suspended by the Commissioner if she determines that the car wash has been found liable in a civil, criminal or administrative action "involving egregious or repeated nonpayment or underpayment of wages" (Ex. A at 4, 8 (§§ 20-541(e)(3)(ii); 20-545(a)).)

**Background**

25.     The car wash industry has been the target of a concerted union organizing effort by the Retail, Wholesale and Department Store Union ("RWDSU") since at least 2012 through a campaign called WASH New York, created by RWDSU and nonprofit organizations Make the Road New York and New York Communities for Change.  Since the campaign began, a small number of car washes have seen their employees vote to join RWDSU and have agreed to

collective bargaining agreements. Most car wash employees in New York City have not voted to join RWDSU and the vast majority of car washes in New York City do not have collective bargaining agreements.

26. This union campaign included drafting the legislation and lobbying the City Council to pass Local Law 62, "The Car Wash Accountability Law." Between 2012, when a version of the Car Wash Accountability Act was first proposed, and 2015, when the law was passed, city council members stated at public hearings that they hoped more car wash owners would enter into collective bargaining agreements.

27. The discrepancy in the law's surety bond requirement between the costs and related requirements associated with obtaining the $150,000 bond for non-union car washes and the $30,000 bond for union car washes with collective bargaining agreements affords the union campaign significant bargaining leverage with which the union can pressure car washes and their employees.

28. If Local Law 62 takes effect, car wash owner members of the Association and the individual plaintiff car wash owners will be under significant pressure to unionize and enter collective bargaining agreements in order to qualify for the lower bond requirement, and this pressure will be a factor in whether they agree to unionize and enter collective bargaining agreements (and on what terms) even if it would not be in the economic interests of their car washes or the result of elections to join a union by their employees as prescribed by the National Labor Relations Act ("NLRA").

29. Thus, rather than leaving car wash employees and employers free to exercise their rights under the NLRA with respect to the collective bargaining process, the union campaign has attempted to unfairly exercise its influence and control over the City Council and New York

City's regulatory structure to achieve gains it could not achieve fairly through the collective bargaining process.

30. In sum, the union campaign and the complicit City Council and Mayor have substituted the free-play of political forces for the free-play of economic forces that was intended by the NLRA. *See Chamber of Commerce v. Bragdon*, 64 F.3d 497, 504 (9th Cir. 1995).

**Legislative History**

31. In 2012, an earlier version of the Car Wash Accountability Law was proposed but was not enacted by the City Council. That version – Int. No. 852 – contained a surety bond requirement of $300,000 for all applicants, regardless of whether or not they had a collective bargaining agreement. After the proposed law was sent to the Committee on Civil Service and Labor, an amended version – Int. No. 852-A – was proposed containing a surety bond requirement with varying amounts from $150,000 to $300,000 for car washes that did not have collective bargaining agreements, but only $30,000 for car washes that had such agreements. In addition, unlike the original version, Int. No. 852-A expressly conditioned the surety bond upon satisfaction of any final legal judgment recovered by any individual who was employed by the licensee and was damaged by the licensee's failure to pay wages or liquidated damages or interest associated with a claim for unpaid wages.

32. At the public hearing for Int. No. 852-A, an attorney for Make the Road New York testified that his organization – a partner of RWDSU in the WASH New York campaign – was the lead author of the Car Wash Accountability Act. The Department of Consumer Affairs submitted a letter to the Committee stating that it did not believe the car wash industry has the type of consumer issues that warrant a licensing scheme, noting that there had been only 11 consumer complaints in the entire industry in the past two-and-a-half years. There was no public

discussion of the proposed disparate treatment of car washes that do not have collective bargaining agreements versus those that do.  The proposed law was not passed by the Committee or the City Council.

33. In 2014, a public hearing was held on another earlier version of The Car Wash Accountability Law (Int. No. 125-A) , which included a surety bond requirement of $300,000 for all applicants, regardless of whether or not they had a collective bargaining agreement.  At the 2014 hearing, there was no discussion of disparate treatment of car washes that do not have collective bargaining agreements versus those that do – but the version under consideration at the time required the same $300,000 surety bond for all applicants.

34. Car wash owners testified at the hearing concerning the excessive and unprecedented amount of the $300,000 surety bond requirement and the burden that would be placed upon them if they were forced to comply with it.

35. A representative of the surety bond industry testified at the hearing that the majority of car washes would face serious difficulties in obtaining a $300,000 bond.  He noted that no other category of business in New York City faces such a high surety bond requirement as a condition for obtaining a license, and that most are within the $2,000 to $20,000 range.  The Commissioner and General Counsel of the Department of Consumer Affairs testified at the hearing that the $300,000 bond was larger than the bond required for any other category of business by New York City.  The Legislative Director for the New York City Department of Environmental Affairs testified that there were only one or two complaints a year concerning car washes.  Again, the proposed law was not passed by the Committee or the City Council.

36. In 2015, the final version of the law – Int. No. 125-B, which became Local Law 62 of 2015 – was proposed by the Committee.  In this version, the surety bond requirement was

11

fixed at $150,000 for car washes that do not have a collective bargaining agreement and $30,000 for car washes that do have such an agreement. The surety bond was again conditioned upon payment or satisfaction of any final judgment recovered by any employee of the licensee for nonpayment or underpayment of wages within thirty days of such judgment.

37. At a public meeting for Int. No. 125-B there was no public discussion of the reasons for the changes that had been made to the surety bond requirement from the earlier proposals. Car wash owners attempted to speak concerning their disapproval of the changes, but they were not permitted to do so. A City Council member then wrongly assured everyone in attendance that "all of the elements that are passing in today's bill were thoroughly heard and discussed at the prior hearings."

38. The New York City Council approved the "Car Wash Accountability Law," Local Law 62 of the year 2015, codified at NYC Administrative Code Sections 20-539 through 20-5462, on June 10, 2015. (Ex. A at 12.) Mayor Bill de Blasio signed the bill into law on June 29, 2015. (*Id.*) By its own terms, the law is scheduled to take effect 180 days after enactment, on or about December 26, 2015. (*Id.* (§ 4).)

## COUNT ONE
**(National Labor Relations Act Preemption)**

39. The allegations contained in paragraphs 1-38 above are repeated and realleged as if fully set forth herein.

40. The National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, preempts state or local laws that interfere with activities in the collective bargaining process that Congress intended to be left unregulated.

41. The Supreme Court has held that the ability of both employers and employees to apply economic pressure to one another is protected from state and local regulation. *Int'l Ass'n*

12

*of Machinists & Aero. Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976); *Golden State Transit Corp. v Los Angeles*, 475 U.S. 608 (1986).

42. "A local government . . . lacks the authority to introduce some standard of properly balanced bargaining power . . . or to define what economic sanctions might be permitted negotiating parties in an ideal or balanced state of collective bargaining." *Machinists*, 427 U.S. at 149-150 (internal citations and quotations omitted).

43. The NLRA prohibits state and local governments from impairing the economic advantages of either negotiating party to the collective bargaining process to tip the scales in favor of one party or the other.

44. The surety bond requirement of Local Law 62 impermissibly interferes with the collective bargaining process in the car wash industry in New York City by imposing costs and related burdens so excessive on non-union employers that, if they do not agree to unionize and enter a collective bargaining agreement, they will face severe economic harm to their business and a severe competitive disadvantage.

45. The surety bond requirement of Local Law 62 is not a permissible minimum substantive labor standard. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985). It does not affect union and non-union employees equally because it places severe economic pressure and related burdens on non-union car washes and gives their union car wash competitors with collective bargaining agreements an arbitrary advantage in the market. If a car wash has no collective bargaining agreement, it faces the higher costs and related burdens of the $150,000 surety bond as well as increased competitive pressure, and may be forced to terminate employees to reduce expenses or otherwise avoid the surety bond requirement (by becoming a self-service facility). Non-union employees fearful of losing their jobs may be pressured to

unionize and enter into a collective bargaining agreement, even if they would otherwise prefer not to join the union. Thus, by pressuring employers to reach collective bargaining agreements, the surety bond requirement has a direct effect on the interests implicated in the NLRA.

46. Accordingly, the surety bond requirement of Local Law 62 is preempted by the NLRA, violates plaintiffs' federal rights to be free from local government interference in the collective bargaining process on behalf of one side or the other, and enforcement is barred by the Supremacy Clause of the United States Constitution.

### Count TWO
### (State Law Preemption)

47. The allegations contained in paragraphs 1-46 above are repeated and realleged as if fully set forth herein.

48. The New York State Constitution, Article IX, section 2(c), grants local governments the power to adopt and amend local laws not inconsistent with the provisions of the constitution or any general law of the State.

49. Under the doctrine of field preemption, a local law is invalid as inconsistent with State law where the State has evinced a desire to preempt an entire field thereby precluding any further regulation. *Albany Area Builders Ass'n v. Guilderland*, 74 N.Y.2d 372, 377 (1989). "Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute." *Id.*

50. The New York State Legislature has created a comprehensive and detailed regulatory scheme regulating work hours, *see* N.Y. Labor Law art 5, §§ 160 *et seq.*, and the payment of wages, *see* N.Y. Labor Law art. 6, §§ 190 *et seq.*, art. 19 §§ 650 *et seq.* The Legislature has also given the Commissioner of the Department of Labor of the State of New

York expansive authority and discretion in enforcing that wage regulatory scheme. N.Y. Labor Law § 21. Thus, the State Legislature has evinced a desire to preempt the entire field of protection of workers from nonpayment and underpayment of wages.

51. Local Law 62 conditions the surety bond required of applicants upon the condition that an applicant shall pay or satisfy "any final judgment recovered by any employee of the licensee for nonpayment or underpayment of wages within thirty days of such judgment." (Ex. A at 6 (§ 20-542(c)(3)).) Local Law 62 also purports to grant authority to the New York City Commissioner of the Department for Consumer Affairs to deny, revoke, or suspend licenses to operate car washes due to "[a] final determination of liability in a civil, criminal or administrative action involving egregious or repeated nonpayment or underpayment of wages." (Ex. A at 4,8 (§§ 20-545(a); 20-541(e)(3)(ii)).)

52. These provisions of Local Law 62 reflect an attempt by the City to regulate in the same field of protection of workers from nonpayment and underpayment of wages as are regulated by the New York State Labor Law and are inconsistent with the State's transcendent interest. Therefore, Local Law 62 is invalid under the doctrine of field preemption.

53. Under the doctrine of conflict preemption, a local law is invalid as inconsistent with State law where it conflicts with state law. *Lansdown Entertainment Corp. v. New York City Dep't of Consumer Affairs*, 74 N.Y.2d 761, 764 (1989).

54. Local Law 62's purported delegation to the Commissioner of Consumer Affairs the authority to take action against car wash employers who fail to pay their employees conflicts with New York Labor Law § 196(1)(d), which provides the State Commissioner of the Department of Labor the same authority. Specifically N.Y. Labor Law Sec. 196(1)(d) provides:

> If it shall appear to [the State Labor Commissioner] that any employer has been convicted of a violation of any provision of this article [dealing with the payment

of wages] . . . or that any order to comply issued against an employer under this chapter remains unsatisfied . . . the commissioner may require such employer to deposit with him or her a bond in such sum as he or she may deem sufficient and adequate . . . and shall be conditioned that the employer will, for a definite future period, not exceeding two years, pay his or her employees in accordance with the provisions of this article . . . If within ten days after demand for such bond . . . , such employer shall fail to deposit the same, the commissioner may bring an action in the name and on behalf of the people of the state of New York against such employer in the supreme court to compel such employer to furnish such a bond or to cease doing business until he or she has done so.

55.    Therefore, Local Law 62's surety bond requirement and licensing provisions relating to nonpayment and underpayment of wages also expressly conflict with section 196 of the New York Labor Law by purporting to grant authority to the New York City Commissioner of the Department of Consumer Affairs that is already granted to the New York State Commissioner of the Department of Labor under state law.

56.    Thus, Local Law 62 is preempted both under field preemption and conflict preemption by the New York Labor Law and enforcement is barred by the New York State Constitution.

## COUNT THREE
### (Denial of Equal Protection)

57.    The allegations contained in paragraphs 1-56 above are repeated and realleged as if fully set forth herein.

58.    The Equal Protection Clause of the Fourteenth Amendment prohibits disparate treatment of similarly situated persons by States and municipalities unless such treatment bears a rational relation to some legitimate government interest. *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528 (1973); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985).

59.    Non-union car washes in New York City are similarly situated to union car washes in New York City.  They operate in the same market, offer the same category of services, hire from the same population of employees for the same positions, and compete for the same

16

group of customers.

60. The purported government interest served by the surety bond requirement of Local Law 62 is to ensure in advance the existence and availability of funds to pay or satisfy any potential (1) fine, penalty or other obligation to the city; (2) a final judgment recovered by any person who received car wash services from a licensee thereunder and was damaged thereby; and (3) final judgment recovered by any employee of the licensee for nonpayment or underpayment of wages. (Ex. A at 6 (§ 20-542(c)).)

61. There is no rational relationship between Local Law 62's requirement that a non-union car wash furnish a bond that is five times larger than the bond of a union car wash with a collective bargaining agreement and the government's interest in ensuring in advance the existence of such funds.

62. There is no rational basis for requiring a $150,000 surety bond from all car washes, regardless of size, that do not have collective bargaining agreements.

63. Thus, Local Law 62's surety bond requirement is a plain violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and enforcement of Local Law 62 would be an unlawful deprivation of plaintiffs' constitutional rights.

## COUNT FOUR
**(Violation of Due Process)**

64. The allegations contained in paragraphs 1-63 above are repeated and realleged as if fully set forth herein.

65. The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. Thus, states and municipalities may not exercise their police power arbitrarily, without any reasonable

17

justification in the service of a legitimate government objective. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

66. The amount of the $150,000 surety bond required of non-union car washes is arbitrarily excessive on its face, and has no reasonable justification in the service of a legitimate government objective.

67. No other surety bond required by the City to obtain licenses for any other category of business is as high as $150,000. The next highest is $100,000 for process serving agencies, (N.Y.C. Admin. Code § 20-406.1), and others are generally far lower: $500 to $5,000 for laundries, depending on the number of employees, (N.Y.C. Admin. Code § 20-294); $2,000 for auctioneers, (N.Y.C. Admin. Code § 20-279); $10,000 for storage warehouse operators, (N.Y.C. Admin. Code § 20-479); $20,000 for home improvement contractors, (6 R.C.N.Y. § 2-225); $5,000 for vehicle towing companies, (6 R.C.N.Y. § 2-362); $10,000 for pawn brokers, (N.Y. G.B.L. § 41); and $5,000 for employment agencies, (N.Y. G.B.L. § 177).

68. City legislators were informed during public deliberation on the Car Wash Accountability Law that an informal survey by the Department of Consumer Affairs had found only eleven consumer complaints concerning car washes in a two-and-a-half year period.

69. City legislators were informed during public deliberation on the Car Wash Accountability Law that the New York City Department of Environmental Protection had only one or two environmental complaints concerning car washes per year.

70. The sole purpose of the $150,000 amount of the bond is to subject non-union car washes to harsh punitive treatment because they do not have collective bargaining agreements.

71. Punishment of business owners who do not have collective bargaining agreements is not a legitimate government objective.

72. There is no rational basis for requiring a $150,000 surety bond from all car washes, regardless of size, that do not have collective bargaining agreements.

73. Thus, Local Law 62's surety bond requirement is a plain violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and enforcement of Local Law 62 would be an unlawful deprivation of plaintiffs' constitutional rights.

### COUNT FIVE
### (42 U.S.C. § 1983)

74. The allegations contained in paragraphs 1-76 above are repeated and realleged as if fully set forth herein.

75. The City and its officials are enforcing, or imminently will enforce, Local Law 62.

76. The City and its officials' actions in enforcing Local Law 62 are taken, or imminently will be taken, under color of state law.

77. The City and its officials' enforcement of Local Law 62 will deprive plaintiffs of rights, privileges, or immunities guaranteed by the United States Constitution and federal law.

78. As set forth herein, the City and its officials' enforcement of Local Law 62 will deprive plaintiffs of rights protected under the NLRA.

79. As set forth herein, the City and its officials' enforcement of Local Law 62 will deprive plaintiffs of equal protection under the law and due process, guaranteed by the Fourteenth Amendment to the United States Constitution.

80. The City and its officials' enforcement of Local Law 62 will cause plaintiffs real and substantial injury.

81. As a result of the City and its officials' actions, plaintiffs are entitled to damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that the Court enter a judgment:

A. Declaring that Local Law 62 is invalid, without force and effect, and that plaintiffs are not required to abide by its terms;

B. Preliminarily and permanently enjoining defendants' implementation and enforcement of Local Law 62;

C. Awarding plaintiffs damages, costs and reasonable attorneys' fees; and

D. Awarding plaintiffs such other and further relief as the Court may deem just and proper.

Dated:  October 16, 2015               Respectfully submitted,

                                       /s/   *Michael Cardozo*

                                       PROSKAUER ROSE LLP
                                       Michael A. Cardozo
                                       Mark D. Harris
                                       Milton E. Otto
                                       James Unger*
                                       Eleven Times Square
                                       New York, NY 10036-8299
                                       212-969-3000
                                       mcardozo@proskauer.com
                                       mharris@proskauer.com
                                       motto@proskauer.com
                                       junger@proskauer.com


                                       *Admission pending in the Southern District of New York